# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1182 | **DATE** | 7/25/2001 |
| **CASE TITLE** | Dahlin vs. Evangelical Child | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss (3-1) is granted in part and denied in part. Counts 3 and 4 are dismissed. The dismissal of Count 3 is for failure to state a claim. The Court believes that most appropriate characterization of the dismissal of Count 4 is as a dismissal for lack of subject matter jurisdiction. The discovery schedule set by the Court on April 19, 2001 remains in effect.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 26 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 10 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING | JUL 26 2001 | |
| | | | date mailed notice | |
| OR | courtroom deputy's initials | 01 JUL 25 PM 5: 14 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

CAROL DAHLIN, GENE DAHLIN, )
and FRANCIE DAHLIN )
                              Plaintiffs, )
v. ) Case No. 01 C 1182
EVANGELICAL CHILD & FAMILY )
AGENCY, )
                              Defendant. )

JUL 2 6 2001

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Carol and Gene Dahlin and their adopted daughter Francie have brought suit against Evangelical Child & Family Agency, which arranged the adoption. They claim that Evangelical deliberately withheld information from them regarding Francie's birth mother's history of mental problems, as well as other family and medical history. Evangelical has moved to dismiss one of Carol and Gene's claims, as well as Francie's only claim, for failure to state a claim.

### Facts

Because Evangelical's motion is made under Rule 12(b)(6), we take the complaint's allegations as true.

Carol and Gene Dahlin adopted Francie as an infant in 1978. According to the complaint, the adoption agency, Evangelical Child & Family Agency, disclosed to the Dahlins certain positive

1

information about Francie's birth mother (e.g., she was a talented pianist with an interest in linguistics) but failed to disclose negative family history of which it was aware, such as the suicide of Francie's birth grandmother and the sexual abuse of Francie's birth mother by her birth grandfather. They allege that in 1987, Evangelical responded to a request for information by Francie's mental health counselor with similarly incomplete disclosure. From 1989 to 1998, an employee of Evangelical is claimed to have stonewalled Carol Dahlin's numerous requests for mental health information; Francie's requests were similarly turned away from 1995 (when she turned 18 and had authority under the relevant Illinois statute to demand information) until 1998.

During her youth, Francie experienced severe behavioral problems, depression, anxiety and "acting out behaviors," a 2½ year psychiatric hospitalization, and a diagnosis of Tourrette's Syndrome. The Dahlins allege that Evangelical's withholding of negative information about her family history impeded treatment of these problems and thus exacerbated them.

The complaint contains three claims by Carol and Gene Dahlin, alleging fraud, negligence, and Illinois Adoption Act disclosure violations, and one claim by Francie, alleging negligence. Evangelical has moved to dismiss the Illinois Adoption Act claim (Count 3) and Francie's negligence claim (Count 4).

## Analysis

Evangelical argues that Count 3, Carol and Gene Dahlin's claim under the Illinois Adoption Act, is expressly forbidden by the text of the Act and that the Dahlins have not met the conditions for an implied cause of action under the statute. As for Count 4, Francie's negligence claim, Evangelical argues that no Illinois court has ever recognized a claim by an adopted child in this context and that this Court should not render new Illinois law by finding that Francie has a right to

2

sue Evangelical.

## Count 3 - Implied Statutory Cause of Action

The Court agrees that an implied cause of action for violation of the Illinois Adoption Act's disclosure provisions, *see* 750 ILCS 50/18.5 (1992) & former Ill. Rev. Stat. ch. 40, §1522.4 (1985), is inappropriate under Illinois law, as the Dahlins have an adequate remedy for statutory violations via their negligence claim asserted in Count 2. In *Roe v. Catholic Charities of the Diocese of Springfield*, 225 Ill. App. 3d 519, 588 N.E.2d 354 (1992), the Illinois Appellate Court for the Fifth District held that adopting parents who are deprived by an adoption agency of material facts relating to their child's medical and mental health history can raise claims of fraud, *id.* at 527, 588 N.E.2d at 358, and negligence or "adoption agency malpractice." *Id.* at 532, 588 N.E.2d at 362.

The Illinois Supreme Court has propounded a four-part test for determining whether a statute implies a cause of action: (1) the plaintiff is a member of the class for whose benefit the statue was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute. *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460, 722 N.E.2d 1115, 1117-18 (1999). *See also Givot v. Orr*, 321 Ill. App. 3d 78, 87, 746 N.E.2d 810, 818 (2001) (finding that a cause of action was not implied by a statute where the third and fourth elements were not shown). Evangelical does not dispute that the Dahlins are members of the class of persons who suffered the type of harm envisioned by the statute. *See generally* David W. Robertson, *The Vocabulary of Negligence Law: Continuing Causation Confusion*, 58 LA. L. REV. 1, 11-12 (1997) (analyzing the classic test for statutory violations used as evidence of negligence articulated in *Gorris v. Scott*, L.R. 9 Ex. 125 (Court of Exchequer 1874)).

3

The parties disagree about the third element (the purpose of the Adoption Act), but the point is moot because the Dahlins founder on the fourth element: they have an adequate, alternative remedy. The Court sees nothing that indicates that the Dahlins' common law cause of action is inadequate to protect their interests. *See Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 718 N.E.2d 181 (1999) (noting that "a common law negligence action effectively implements the public policy behind the [Lead Poisoning Prevention] Act," so an implied cause of action is unnecessary).

Cases cited by the Dahlins are not to the contrary. *Rodgers v. St. Mary's Hospital of Decatur*, 149 Ill. 2d 302, 597 N.E.2d 616 (1992), which involved a claim against a hospital for failing to maintain X-ray negatives, did not involve a parallel, duplicative common law claim. The tort of spoliation of evidence did not exist in Illinois until 1995, *see Boyd v. Travelers Insurance Co.*, 166 Ill.2d 188, 192-93, 652 N.E.2d 267, 269-70 (1995), so an implied cause of action under the X-Ray Retention Act was required to preserve an adequate remedy for the plaintiffs. The same is true of *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379, 432 N.E.2d 849 (1982) (implying a cause of action from the Real Estate Brokers and Salesmen License Act absent any remedy sounding in negligence). The defendants in *Sawyer* were real estate brokers who had listed property that the plaintiffs were interested in purchasing. The *Sawyer* plaintiffs could not maintain a common law action for interference with a prospective economic advantage, given that "they were merely one of any number of *potential* buyers." *Stefani v. Baird & Warner, Inc.*, 157 Ill. App. 3d 167, 175, 510 N.E.2d 65, 71 (1987) (emphasis in original) (affirming dismissal of such a claim). Again, implying a cause of action was necessary to effectuate the statute.

Finally, in *Corgan v. Muehling*, 143 Ill. 2d 296, 574 N.E.2d 602 (1991), the plaintiff sued her unregistered psychologist for negligent infliction of emotional distress after he engaged in a

4

sexual relationship with her while she was his patient. She also made a claim under a provision of the Psychologist Registration Act which required psychologist to register. The statute allowed for enforcement actions to be brought by the director or state's attorney of the appropriate county but did not expressly provide for a private right of action. The court found, among other things, that an implied cause of action under the Psychologist Registration Act was necessary to provide an adequate remedy "to protect the public from persons who are incompetent and unqualified to render psychological services." 143 Ill. 2d at 316, 574 N.E.2d at 612. The plaintiff's common law action for negligent infliction of emotional distress, which was premised on the defendant's sexual relations with her, addressed a completely different wrong than that targeted by the statute's registration requirement. Thus *Corgan* does not address the situation presented here, in which the plaintiffs' proposed statutory claim essentially tracks their parallel common law negligence claim.

In sum, the Court dismisses Count 3 for failure to state a claim.

## Count 4 - Child's Negligence Claim

In Count 4, Francie, the Dahlins' adopted child, asserts a negligence claim against Evangelical. She alleges that Evangelical, as an adoption agency entrusted with her care and placement, owed her a duty of care before, during, and after her adoption by the Dahlins. Evangelical breached that duty, she claims, by failing to disclose her family medical history to Carol and Gene Dahlin, failing to obtain additional information from her birth mother, and failing for three years after she turned 18 to disclose her family medical history to her.

As with Count 3, this Court must start with Illinois law. No Illinois court has ever upheld a claim in this context on behalf of an adopted child. And though the court in *Roe* recognized the adopting parents' claims, it viewed the children's claims differently:

5

> In essence, all four counts on behalf of the adopted children allege that had defendant not made fraudulent misrepresentations, their problems would have been dealt with by defendant rather than their respective adoptive parents, and that the adopted children have thereby suffered injury. After consideration of these counts, including taking the allegations as well-pleaded and therefore true, we determine that they fail to state a cause of action accruing to these named plaintiffs, the children, with identifiable injury in either fraud or negligence.

*Roe*, 225 Ill. App. 3d at 538-39, 588 N.E.2d at 366.

As Francie concedes, *Roe* is the only word from the Illinois appellate courts on this specific point. She attempts to distinguish *Roe*, arguing that the court dismissed the claims of the child-plaintiffs only because they (unlike Francie) failed to plead any identifiable injury, not because they had no legal right to bring a claim. There is no way of telling, however, whether this claimed distinction would have been of any significance to the court in *Roe*.

More importantly, even if *Roe* is distinguishable, that does not help Francie, for there is still no Illinois authority directly supporting her right to bring a claim against Evangelical. She contends that her claim is proper under Illinois law because it merely represents the application of settled law – i.e. a wrongful adoption claim – to a claim by an adopted child. But Illinois law ordinarily requires as a prerequisite to a tort claim a showing that the defendant owed a duty to the plaintiff. *See generally Hills v. Bridgeview Little League Association*, 195 Ill. 2d 210, 228, 745 N.E.2d 1166, 1178 (2000); *Roe*, 225 Ill. App. 3d at 531, 588 N.E.2d at 361. The Court in *Roe* found that an adoption agency owed a duty of honesty to adoptive parents, but no Illinois case holds that an agency owes a similar duty to children under its care or whose adoption it has arranged. Francie argues that her claim may be sustained under the "special relationship" doctrine, under which a wrong done to one person which invades the rights of another "intimately related" to the first person may give rise to a cause of action on the part of the second person. In *Renslow v. Mennonite Hospital*, 67 Ill. 2d 348,

367 N.E.2d 1250 (1977), the Illinois Supreme Court applied this principle to uphold a claim on behalf of a child for injuries suffered *in utero* due to the negligent transfusion of incompatible blood into the child's mother. But though we have no doubt that Francie had a highly dependent relationship both with Evangelical before her adoption and with the Dahlins afterward, no Illinois case has applied the special relationship doctrine in anything approaching the present context, and the Supreme Court has repeatedly indicated that the doctrine is a narrowly limited exception to the duty requirement. *See Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 530-31, 513 N.E.2d 387, 398 (1987); *Doe v. McKay*, 183 Ill. 2d 272, 279, 700 N.E.2d 1018, 1022 (1998).

Though it is certainly plausible that the Illinois courts might apply the special relationship doctrine if they were faced with a claim like Francie's, Francie chose to bring her claim in federal court pursuant to diversity of citizenship jurisdiction. The Seventh Circuit has made it clear that "district courts are encouraged to dismiss [diversity of citizenship] actions based on novel state law claims." *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000). Put another way, "[i]nnovative state law claims should be brought in state court." *Id.* (quoting *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1370 (7th Cir. 1985)). Though this Court would not abdicate its responsibility to determine Illinois law, even in an unsettled area, if there were some analogous authority from the Illinois courts, here there is none. We conclude that it would violate the principle set forth in *Insolia* to determine the merits of Francie's claim.

## Conclusion

Defendant's motion to dismiss [3-1] is granted in part and denied in part. Counts 3 and 4 are dismissed. The dismissal of Count 3 is for failure to state a claim. The Court believes that most appropriate characterization of the dismissal of Count 4 is as a dismissal for lack of subject matter

7

jurisdiction. The discovery schedule set by the Court on April 19, 2001 remains in effect.

Dated: July 24, 2001

MATTHEW F. KENNELLY
United States District Judge