## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1182 | **DATE** | 11/6/2002 |
| **CASE TITLE** | Dahlin vs. Evangelical Child | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached order, defendant's motion to dismiss (16-1, 16-2) is denied. Defendant is directed to answer the amended complaint on or before 11/13/02.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | NOV 0 7 2002 | |
| | Notified counsel by telephone. | | date docketed | 47 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | date mailed notice | |
| | OR / courtroom deputy's initials | 02 NOV -6 PM 5:04 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CAROL DAHLIN and GENE DAHLIN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 01 C 1182 |
| ) | |
| EVANGELICAL CHILD & ) | |
| FAMILY AGENCY, ) | |
| ) | |
| Defendant. ) | |

DOCKETED
NOV 0 7 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Carol and Gene Dahlin adopted Francie Dahlin as an infant from Evangelical Child & Family Agency, an adoption agency, in January 1979. According to their amended complaint, the Dahlins told Evangelical that they were only interested in adopting a normal, healthy child, or a child with minor, correctable medical problems, and not a special needs child. Evangelical represented to the Dahlins that Francie was a normal, healthy child and not a special needs child, except for the possibility that she had juvenile rheumatoid arthritis. It also told the Dahlins that Francie's paternal grandfather was an alcoholic, her maternal grandmother was pre-diabetic, and her birth mother had rheumatic fever and myopia. Believing that Francie was healthy and normal and in reliance on the representations made by Evangelical and the lack of any indication of severe mental and emotional illness in Francie's background, the Dahlins adopted Francie. The Dahlins allege that Evangelical concealed from them that Francie's paternal grandmother was emotionally and physically violent, her paternal grandfather was physically violent, and her

47

maternal history included significant severe mental and emotional problems, including her maternal grandmother's suicide and her maternal grandfather's acts of sexual abuse – all facts which, the Dahlins say, Evangelical knew.

Francie began to exhibit major emotional problems soon after the adoption. As a young child she had serious difficulties with family and school relationships, and she was later diagnosed with Tourette's Syndrome. The Dahlins sought psychiatric care and therapy for Francie and, through their counselors and doctors, requested from Evangelical all available history on Francie and her birth parents on numerous occasions from 1987 to 1998. According to the Dahlins, Evangelical denied that it had any additional information regarding Francie's background.

The Dahlins contend that Francie's behavior devastated the Dahlins and their children, causing injury to their family relationships and their emotional well being. They allege that the lack of information regarding Francie's the mental health history of Francie's biological parents and grandparents made it more difficult to diagnose and treat Francie. Finally, in July 1998, after numerous requests, Evangelical finally disclosed all of the pertinent information.

The Dahlins filed this lawsuit in February 2001. Their amended complaint includes claims for fraud (Count 1), breach of fiduciary duty (Count 2), and negligence (Count 3). Evangelical has moved to dismiss all of these claims and also to preclude any claim for damages based on emotional distress with respect to Counts 2 and 3. For the reasons stated below, the Court dismisses Count 2 but otherwise denies Evangelical's motion.

## Discussion

1.  **Breach of fiduciary duty claim**

The Dahlins allege that Evangelical owed them a fiduciary duty due to its superior access to information, the trust and confidence which they reasonably reposed in the agency, and the agency's voluntary acceptance of their trust and reliance. Am. Cplt. ¶ 60. Evangelical argues that it owed the Dahlins no fiduciary duty and alternatively that this claim is duplicative of the Dahlins' negligence claim.

The parties agree that Illinois law governs this case. In *Neade v. Portes*, 193 Ill. 2d 433, 739 N.E.2d 496 (2000), the Illinois Supreme Court upheld the dismissal of a fiduciary duty claim on the grounds that it was duplicative of a negligence claim. The plaintiff's fiduciary duty claim was based on the same operative facts as her medical malpractice claim, and both claims involved the same injury. After examining the nature of the purported fiduciary duty, the court ruled that the plaintiff's fiduciary duty claim "would boil down to a malpractice claim" in that the fiduciary standard would be the same as the malpractice standard. *Id.* at 444, 739 N.E.2d at 502.

Though *Neade* involved a medical malpractice claim, the Court sees no basis to depart from the way in which that case analyzed the issue of duplication. The Dahlins' fiduciary duty claim is based on the same operative facts as their negligence claims, and both claims are based on the same alleged injuries. *See* Am. Cplt. ¶¶ 65, 72. But the Dahlins make a viable argument that a fiduciary duty would impose greater disclosure obligations upon Evangelical than a negligence standard. The single Illinois appellate-level court that has recognized the viability of a claim for negligence against an adoption agency held that the agency's duty involves making "an honest and complete response to [the adoptive parents'] specific request concerning the

3

characteristics of the potentially adoptable child." *Roe v. Catholic Charities,* 225 Ill. App. 3d 519, 537, 588 N.E.2d 354, 365 (1992). The Dahlins note that a fiduciary duty typically entails a duty of disclosure of material information even in the absence of a request. *See* Pltf. Mem. at 16, 18. *See generally Connick v. Suzuki Motor Co.,* 174 Ill. 2d 482, 500, 675 N.E.2d 584, 593 (1996); *Letsos v. Century 21-New West Realty,* 285 Ill. App. 3d 1056, 1066, 675 N.E.2d 217, 225 (1996). Thus the two standards may well have significant differences.

Because we cannot say that the fiduciary duty claim "boils down" to the equivalent of a negligence claim, we must address Evangelical's argument that the Illinois courts would not recognize a fiduciary duty in this context. In this regard, there is only one Illinois decision that comes anywhere near the issue, the previously-referenced *Roe v. Catholic Charities.* The plaintiff in that case appears to have argued that the adoption agency owed the adoptive parents a fiduciary duty, *see Roe,* 225 Ill. App. 3d at 531, 588 N.E.2d at 361, but the court ended up approving the claim based on a theory of ordinary negligence. *Id.* at 536, 588 N.E.2d at 365. Though we cannot say, as Evangelical argues,[1] that the court specifically rejected the imposition of a fiduciary duty, the court's discussion of its imposition of the duty of an "honest and complete answer" implicitly involved a balancing of the respective interests and a determination that imposition of that duty on an adoption agency was not unreasonable or unduly onerous. *See id.* atv537, 588 N.E.2d at 365 ("The magnitude of the burden on defendant of guarding against the situation alleged is slight; it involves merely an honest and complete answer to the question posed by plaintiffs."). This suggests that the Court implicitly rejected the plaintiff's argument for imposition of a fiduciary duty – which would have been more onerous – or at least that it would

---

[1] The Dahlins do not discuss *Roe* at all in their response to the motion to dismiss.

have done so if it had felt compelled to address the issue directly.

The ultimate issue for this Court, however, is not what the *Roe* court (the Fifth District of the Illinois Appellate Court) would have done, but rather what the Illinois Supreme Court would do if faced with the issue. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Allstate Insurance Co. v. Menard's, Inc.*, 285 F.3d 630, 636 (7th Cir. 2002). Under Illinois law, a fiduciary or confidential relationship may be found in one of two ways: as a matter of law from the relationship of the parties (such as an attorney-client relationship), or based on the facts of a particular situation, such as a relationship where confidence and trust is reposed on one side, resulting in dominance and influence on the other side. *See Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 45-46, 643 N.E.2d 734, 740-41 (1994); *Dyblie v. Dyblie*, 389 Ill. 326, 332, 59 N.E.2d 657, 660 (1945). In the latter situation, Illinois law requires the existence of the relationship to be proved by clear and convincing evidence. *Martin*, 163 Ill. 2d at 45-46, 634 N.E.2d at 741. The factors to be considered in determining whether a fiduciary relationship exists include the degree of kinship, disparity of age, health, mental condition, education and business experience of the respective parties, and the extent to which the allegedly servient party entrusted the handling of his business and financial affairs to and reposed faith and confidence in the dominant party. *Id.* Though the Court considers it unlikely that the Dahlins ultimately will be able to establish by clear and convincing evidence that a fiduciary relationship existed, they correctly argue that they have alleged all of the factual predicates for finding such a relationship. The matter cannot, in the Court's view, be determined on a motion to dismiss pursuant to Rule 12(b)(6).

## 2. Claims for mental and emotional distress

The Dahlins allege that they were direct victims of Evangelical's negligence and breach of fiduciary duty, which caused them to adopt Francie and as a result suffer injury to their family relationship which caused them severe emotional distress. Under Illinois law, a direct victim of negligence may recover damages for emotional distress. *Corgan v. Muehling*, 143 Ill. 2d 296, 308, 574 N.E.2d 602, 607 (1991). Similarly, a victim of a breach of fiduciary duty may recover for emotional distress if the fiduciary had "reason to know that a breach of [the] fiduciary duty [was] likely to cause emotional distress, for reasons other than pecuniary loss." *Doe v. Roe*, 289 Ill. App. 3d 116, 130, 681 N.E.2d 640, 650 (1997).

In seeking to preclude the Dahlins' request for emotional distress damages, Evangelical relies primarily on *Siemieniec v. Lutheran General Hospital*, 117 Ill. 2d 230, 512 N.E.2d 691 (1987). In *Siemieniec*, the parents of a child born with hemophilia brought an action individually and on behalf of their child against their health-care providers for the wrongful birth and wrongful life of their child, alleging that but for the defendants' negligent diagnosis and failure to disclose the risks of their child contracting hemophilia, they would not have continued the pregnancy. The court held that the plaintiffs could not pursue a claim of negligently-caused emotional distress "absent allegations and proof of an [sic] intentional and outrageous conduct, or that the parents were at high risk to themselves which resulted in their physical injury or illness by reason of emotional distress caused by defendants' negligence." *Id.* at 262, 512 N.E.2d 707 (citations omitted). Evangelical argues that because the Dahlins can make no such showing, their request for emotional distress damages should be barred.

In *Corgan,* however, the Illinois Supreme Court rejected the defendant's argument that

6

*Siemieniec* governs cases involving direct victims of the defendant's negligence. Rather, it ruled, the holding in *Siemieniec* was based on the fact that the parents in that case were, in effect, bystanders and not direct victims, for they claimed to have suffered emotional distress as a result of watching their child's disease. *Corgan,* 143 Ill.2d at 304, 574 N.E.2d at 606. The same is not true here. Unlike the plaintiffs in *Siemieniec,* the Dahlins allege that they are direct victims of defendant's fraud and negligence, and the injury they allege was (at least primarily) to their family relationship. Thus they are entitled to seek damages for emotional distress.

3.  **Statute of limitations**

Evangelical argues that the Dahlins' claims are barred by Illinois' two-year statute of limitations relating to claims for damages for "an injury to the person," 735 ILCS 5/13-202. The Dahlins argue that their injury is not an injury to the person within the meaning of 13-202 and that their claims are therefore subject to Illinois' five-year residual statute of limitations, 735 ILCS 5/13-205.

In their response to Evangelical's motion, the Dahlins noted that irrespective of which statute of limitations applies, they have sufficiently alleged that Evangelical fraudulently concealed their claim, which if established entitles the Dahlins to an extension of the statute of limitations:

> If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled therefore, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards.

735 ILCS 13-215. The Dahlins' amended complaint undeniably lays out a sufficient foundation for application of section 13-215, and this action was brought within five years of the Dahlins'

discovery, in 1998, of the matters that they say Evangelical had concealed from them. In its reply, Evangelical makes no response to the Dahlins' invocation of section 13-215 and thus effectively concedes its applicability, at least for purposes of the present motion. In short, irrespective of which statute of limitations initially governs the Dahlins' claims, those claims may proceed to trial.

Because, however, it is unclear whether the Dahlins will be able to sustain their fraudulent concealment claim, the Court will address question of which statute of limitations applies. Under Illinois law, "[t]he determination of the applicable statute of limitations is governed by the type of injury at issue, irrespective of the pleader's designation of the nature of the action," and irrespective of the facts from which the claim arises. *Armstrong v. Guigler*, 174 Ill. 2d 281, 286, 673 N.E.2d 290, 294 (1996). In each of their claims, the Dahlins allege that they "have suffered substantial damages consisting of severe mental and emotional distress, pain and suffering, the loss of a normal family life for them and their other children, the loss of the time spent dealing with Francie's issues, and the expenses incurred in connection with Francie's medical care and treatment." Am. Cplt. ¶¶ 58, 65, 72. They claim but for Evangelical's conduct, they would not have adopted Francie.

Evangelical's argument is essentially that because the Dahlins' primary damage claim involves emotional distress, their claim is one for personal injuries. But this argument confuses the concepts of injury and damages. The two are not the same. *Cf. Schobert v. Illinois Department of Transportation*, 304 F.3d 725, 730 (7th Cir. 2002) (distinguishing between the two concepts in discussing a jury instruction). A plaintiff's injury consists of the violation of a right for which the law provides a remedy; damages are the remedy the law provides for such an

8

injury. *Compare* Black's Law Dictionary 789 (7th ed. 1999) *with id.* 393. This distinction is implicit in 13-202 itself; the statute distinguishes between injury and damages, as it applies to "actions for *damages* for an *injury* to the person." 735 ILCS 5/13-202 (emphasis added). Thus the fact that a plaintiff is claiming *damages* for emotional distress does not inexorably mean that her *injury* is an "injury to the person."

In *Mitchell v. White Motor Co.*, 59 Ill.2d 159, 162-63, 317 N.E.2d 505, 507 (1974), the Illinois Supreme Court held that a claim for the loss of consortium was subject to section 13-205 rather than section 13-202 because the plaintiff's injury was an injury to a personal relationship.[2] The same is true in this case. The Dahlins' claim is based on an injury to a relationship, from which emotional distress resulted, not on an injury to the person. Put another way, Evangelical's alleged concealment and nondisclosure did not directly cause emotional distress; rather it caused an injury to the family relationship that ultimately resulted in emotional distress.

Evangelical argues that even if the case involves a "relationship injury" rather than a "personal injury" within the meaning of section 13-202, a two year statute of limitation still applies, namely 735 ILCS 5/13-203, a post-*Mitchell* enactment that imposes a two year limitation period on actions for damages for loss of consortium. The Court concludes, however, that section 13-203 does not govern the Dahlins' claims. The statute is limited by its terms to "actions for damages for loss of consortium or other actions *deriving from injury to the person of another.*" 735 ILCS 5/13-203 (emphasis added). That is not the case here; the Dahlins' relationship injury does not derive from an injury to anyone else's person.

---

[2] Though the holding in *Mitchell* was ultimately overruled by the adoption of 735 ILCS 5/13-203 (imposing a two-year statute of limitations for claims for loss of consortium deriving from an injury to the person of another), the Supreme Court's reasoning still represents good law.

9

## Conclusion

For the reasons stated above, defendant's motion to dismiss [docket item 16-1, 16-2] is denied. Defendant is directed to answer the amended complaint on or before November 13, 2002.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 6, 2002