# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1182 | **DATE** | 12/18/2002 |
| **CASE TITLE** | Dahlin vs. Evangelical Child and Family | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, defendant's motion in limine (25-1) is granted; its motion in limine Nos. 2,3,5 and 6 (25-1,26-1,27-1) are denied; its motions in limine Nos. 4 and 7 (25-1 & 28-1) are granted in part and denied in part; and its motions in limine Nos. 8 and 9 (29-1 & 30-1) are granted only to the extent that plaintiffs are required to elect between expert witnesses Maiser and Goffinet. Plaintiffs' motion in limine regarding Dr. Fink (43-1) and their motion in limine regarding Ron Nydam (42-1) are granted in part and denied in part, and their motion in limine regarding defendant's not-for-profit status (44-1) is granted. Motion 45-1 &2 are terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 2 3 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 53 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | | |
| OR6 | courtroom deputy's initials | 02 DEC 20 PM 3:34 | date mailed notice | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

CAROL DAHLIN and GENE DAHLIN,  )
                               )
           Plaintiffs,         )
                               )
vs.                            )   Case No. 01 C 1182
                               )
EVANGELICAL CHILD AND          )
FAMILY AGENCY,                 )
                               )
           Defendant.          )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The purpose of this Memorandum Opinion is to deal with the parties' motions *in limine*.

A.  **Defendant's motions *in limine***

Defendant Evangelical Child and Family Agency has filed nine motions *in limine*, entitling each one with a number, e.g., "Defendant's Motion *In Limine* Number 1." We will address each motion in turn.

   1.  **Evidence of other lawsuits**

Defendant Evangelical Child and Family Agency seeks to preclude evidence regarding other lawsuits against Evangelical. Plaintiffs Carol and Gene Dahlin refer to no other evidence of this type in the final pretrial order, nor do they cite any such evidence in response to defendant's motion. The motion is granted.

   2.  **Evidence of Francie Dahlin's medical expenses after age 18**

The Court denies Evangelical's motion to preclude evidence regarding the Dahlins'

payment of their adopted daughter Francie's medical expenses after she turned eighteen. Defendant cites no authority for this motion. The Dahlins are entitled to offer evidence that they had an obligation– either legal or moral – to pay these expenses at least while Francie was in college.

### 3. Evidence of emotional distress damages

The Court denies Evangelical's motion to preclude evidence of emotional distress damages for the reasons stated in our recent ruling regarding defendant's motion to dismiss the second amended complaint. *See Dahlin v. Evangelical Child and Family Agency*, No. 01 C 1182, 2002 WL 31541618, at *3-4 (N.D. Ill. Nov. 6, 2002).

### 4. Evidence regarding propriety of Beverly Ozinga's communications with Francie Dahlin

In February 1998, Beverly Ozinga, an employee of Evangelical, spoke with Francie Dahlin by telephone concerning some of the same information about her biological parents and grandparents that the Dahlins say Evangelical had withheld and concealed from them at the time of the adoption and for years thereafter. Evangelical asks the Court to exclude evidence that Ozinga's disclosures to Francie upset her and them, as well as evidence that Ozinga acted inappropriately. The Court agrees with the Dahlins that evidence about the phone calls is admissible because it forms part of the factual backdrop for the Dahlins' eventual discovery of the truth about Francie and is thus relevant to issues such as explanation of the relationship between the Dahlins and Evangelical, proximate causation of certain of the Dahlins' claimed damages, and accrual of their claim for purposes of the statute of limitations. The Court does not, however, see how evidence of the *propriety* of Ozinga's disclosure bears on the merits of the

Dahlins' claims against Evangelical, and the Dahlins have made little effort to provide an argument or explanation in this regard. Thus evidence (including expert testimony) on whether Ozinga acted properly is excluded. Finally, the Dahlins argue that this evidence tends to show that Evangelical was not actually acting out of concern for Francie's best interests. The Court reserves ruling on whether it will permit the Dahlins to take this position in closing argument; our ruling will depend on the evidence and argument offered by Evangelical along these lines.

### 5 & 6. Testimony of Dr. David Cline and Michael Franke

In two separate motions, Evangelical seeks to preclude certain opinions that it anticipates will be elicited from two of the Dahlins' witnesses, psychiatrist Dr. David Cline and psychologist Michael Franke. Both Dr. Cline and Mr. Franke treated Francie from 1991 through 1993. It appears that both of these witnesses will testify, among other things, that Francie's mental illnesses may well have had a genetic component and that their treatment of her would have differed, and might have been more successful, had they known of the information about Francie's birth parents and grandparents that the Dahlins claim Evangelical withheld and concealed.

Evangelical argues that this testimony is unduly speculative. Though it concedes that certain mental illnesses may be genetically based, it argues that there is no evidence that Francie's birth parents or grandparents had any particular identifiable mental illness, and it also argues that the allegedly withheld information about Francie's background would not have permitted any prediction regarding the likelihood that she would develop a mental illness.

Evangelical's arguments may have a significant bearing on the weight to be accorded to Cline and Franke's testimony by the jury, but they do not affect its admissibility. At their

depositions, both witnesses testified to a reasonable degree of scientific certainty that Francie suffered from disorders that have been shown to have a genetic component; both testified that family history information of the type withheld is necessary and significant in making a proper diagnosis and determining treatment; and both testified that they would have followed a different course of treatment had they known of the withheld information. Applying the factors set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702, the Court finds that Dr. Cline's and Mr. Franke's testimony is reliably based on scientific knowledge and will assist the jury in understanding and determining facts that are in issue. Evangelical's motion to preclude this testimony is denied.

### 7. Testimony of Demosthenes Lorandos

Evangelical next moves to bar testimony by Demosthenes Lorandos, a clinical psychologist retained by the Dahlins to testify at trial. Lorandos' report describes nine opinions:

1) familiarity with scientific literature is necessary for the ethical practice of adoption and any behavioral science discipline;

2) as of the time of Francie's adoption, the readily available literature of behavioral genetics reported a genetic predisposition to psychological / psychiatric dysfunction;

3) at the time of the adoption, it should have been apparent to any minimally informed adoption or behavioral science professional that Francie's biological parents showed a genetically linked psychological / psychiatric dysfunction;

4, 5 & 6) it was fraud in the inducement, "fraud in factum," and a breach of the standard of care for behavioral science professionals for Evangelical's adoption workers to fail to inform the Dahlins of the dysfunction in Francie's biological parents and the possibility

4

of a genetic predisposition to similar dysfunction in Francie;

7 & 8) Francie's and the Dahlins' psychological stress may have been ameliorated if Evangelical had made full disclosure to the Dahlins; and

9) Francie and the Dahlins were damaged as a result of Evangelical's fraud and breach of the standard of care.

Opinions 1, 2, and 3 are admissible only in part. At his deposition, Lorandos repeatedly testified to his lack of expertise in adoption practices. *See, e.g.,* Lorandos Dep. 20, 30, 37-38. Based on this admitted lack of expertise, Lorandos has no basis upon which to render an opinion that is specific to the adoption field. But as a licensed clinical psychologist, Lorandos appears qualified to testify regarding what applicable ethical standards required of behavioral science professionals, including psychologists and social workers, regarding familiarity with professional literature and on what the pertinent literature reflected at the relevant time. That testimony is relevant because at least some of Evangelical's adoption workers were social workers. Evidence that a reasonable adoption worker would have considered the withheld information significant is probative of the question whether the information was material, an element of the Dahlins' fiduciary duty claim, *see, e.g., Connick v. Suzuki Motor Co.,* 174 Ill. 2d 482, 5000, 675 N.E.2d 584, 593 (1996), and the question whether Evangelical intended the Dahlins to rely on the concealed or withheld information, an element of their fraud claim. *See, e.g., Siegel v. Levy Organization Development Co.,* 153 Ill. 2d 534, 543, 607 N.E.2d 194, 198 (1992). Thus Lorandos may testify to opinions 1, 2 and 3, though he may not particularize these to the adoption context.

Lorandos may not testify regarding opinions 4 and 5 – that Evangelical's actions

5

constituted fraud. This is a quintessential jury determination on which the Court will instruct a jury concerning the factors it is to consider; Lorandos has nothing meaningful to contribute in his capacity as an expert in the field of clinical psychology.[1] A finding of fraud requires proof of the defendant's intent. *Siegel*, 153 Ill. 2d at 542-43, 607 N.E.2d at 198. Even assuming that he had the qualifications to determine someone else's intent – an assumption not borne out in the materials submitted to the Court – and even though Federal Rule of Evidence 704(a) abrogates the common-law rule barring expert opinions on an "ultimate issue," we must nonetheless analyze whether an "expert" opinion on this topic would assist the jury and if so, whether its probative value is outweighed by its danger for unfair prejudice. *See* Fed. R. Evid. 704, Advisory Committee Notes ("The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day."). *See also* C. Mueller & L. Kirkpatrick, Federal Evidence §361 at 708 (1994 & Supp. 2001) (expert testimony that touches on an ultimate issue "remains excludable, not because it directly touches ultimate issues, but because it is not helpful. And FRE 704 is not an open sesame to all opinion."). Lorandos can render an opinion regarding Evangelical's intent only by drawing inferences from the evidence. The Dahlins have not persuaded the Court that Lorandos is any more qualified than an ordinary juror to draw those inferences. In *Woods v. Lecureux*, 110 F.3d 1215 (6th Cir. 1997), the court

---

[1] Lorandos is also a licensed attorney, but that does not affect the outcome here, and the Dahlins do not argue (nor could they with a straight face) that this enables Lorandos properly to render an opinion regarding the intent of Evangelical's personnel.

6

held that expert testimony that conduct by warden was "deliberately indifferent" was properly excluded. It reasoned that "whether a prison official acted with deliberate indifference depends on that official's state of mind. Thus, by expressing the opinion that [the official] was deliberately indifferent, [the expert] gives the false impression that he knows the answer to this inquiry, which depends on [the official's] mental state." *Id.* at 1221. The court stated that "testimony that does little more than tell the jury what result to reach" is unhelpful and thus inadmissible, and testimony regarding intent – essentially an inference from other facts – "is even more likely to be unhelpful to the trier of fact." *Id.*[2] *See also, e.g., Aerotech Resources, Inc. v. Dodson Aviation, Inc.*, No. 00-2099-CM, 2001 WL 474296 (D. Kan. 2001) (striking expert's testimony regarding parties' intent in entering into a contract); *Tasch, Inc. v. Sabine Offshore Service, Inc.*, No. 97-15901 JAB, 1999 WL 596261 (E.D. La. 1999) (same). *Cf. United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991) (holding inadmissible testimony of an IRS agent regarding the purpose of a transaction; "[m]uch of [his] testimony consists of nothing more than drawing inferences from the evidence that he was no more qualified than the jury to draw.").

The Court also precludes Lorandos from testifying regarding Opinion 6 – that Evangelical's workers did not comply with the "standard of care" that purportedly applied to adoption agencies at the time of the adoption and thereafter. First of all, as noted earlier, Lorandos repeatedly disavowed in his deposition any expertise in adoption agency practice. *Supra* at 5. Moreover, although "standard of care" testimony is common, and sometimes required, in professional malpractice cases in Illinois, *see, e.g., Barth v. Reagan*, 139 Ill. 2d 399,

---

[2] In *West v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997), the Seventh Circuit cited *Woods* with approval for the proposition that an expert witness is not allowed to draw "legal conclusion[s]."

407, 564 N.E.2d 1196, 1200 (1990) (legal malpractice); *Dolan v. Galuzzo,* 77 Ill. 2d 279, 281, 396 N.E.2d 13, 15 (1979) (medical malpractice), this is not the usual professional malpractice case: the standard of care is a specific one which, as the Court determined in its recent ruling, is supplied by *Roe v. Catholic Charities,* 225 Ill. App. 3d 519, 537, 588 N.E.2d 354, 365 (1992): the duty to provide "an honest and complete response to [the adoptive parents'] specific request concerning the characteristics of the potentially adoptable child." Lorandos is no more qualified than an ordinary juror to opine on whether Evangelical was honest and complete. His opinion that Evangelical breached this particular standard of care is not helpful to the jury and is therefore inadmissible with respect to the negligence claim.

The Court will permit Lorandos to testify that disclosure of the information would have led to different treatment of Francie and might have resulted in the amelioration of her condition (Opinion 7). There is no question that as a licensed clinical psychologist who has extensive experience treating patients, Lorandos is qualified to render this opinion. Evangelical argues that the testimony lacks foundation because the Dahlins cannot prove that Francie had a genetically-based condition; the Court rejects this argument for the reasons discussed with respect to the testimony of Francie's treating psychiatrist and psychologist, Dr. David Cline & Michael Franke. Though Lorandos' testimony in this regard overlaps with that of Cline and Franke, its cumulative effect does not substantially outweigh its probative value, *see* Fed. R. Evid. 403, because the treaters' testimony is subject to cross-examination for bias and interest based on, among other things, their long-standing relationship with Francie and the Dahlin family. At oral argument on this motion, Evangelical's counsel did not disavow the intention to pursue cross-examination and argument along those lines. Were Evangelical to stipulate that it would avoid such inquiry and

argument, the balance would shift, and the Court would conclude that Lorandos' testimony on this topic is unduly cumulative and inadmissible under Rule 403.

Lorandos may not testify regarding the amelioration of the *Dahlins'* psychological stress. His testimony in this regard boils down to the proposition that if Francie's treaters had had the information that would have permitted them to treat her condition properly, it would have made things much easier and less stressful to her parents. Though the Dahlins' emotional distress and its cause is undeniably relevant, Lorandos' expertise as a psychologist adds nothing beyond what the jurors' own common sense will inform them.

Finally, the Court bars Lorandos from testifying that Evangelical's conduct proximately caused the Dahlins' injury (Opinion 9). His testimony in this regard would amount to a legal conclusion and adds nothing proper beyond Opinion 7, his testimony that full disclosure would have enabled Francie's treaters to ameliorate her condition.

## 8 & 9. Mary Ann Maiser and Lynn Goffinet

The Dahlins propose to call Mary Ann Maiser, a licensed consulting social worker and a retained expert, to testify regarding standards of care in adoption agency practice at the relevant time. *See* Plaintiffs' Response to Defendants' Motion *In Limine* Number 8, pp. 1-3. They also propose to call Lynn Goffinet, who is also a fact witness, to testify regarding these same subjects. *See* Plaintiffs' Response to Defendants' Motion *In Limine* Number 9, p. 1.[3] Based on the parties' submissions and the discussion at oral argument, it appears that the testimony of Maiser and

---

[3] Based on these witnesses' reports and depositions, Evangelical had moved to bar a number of other opinions that it believed they might offer. However, the Dahlins' response to these motions limited Maiser and Goffinet to the subject matter discussed above, and the Court will hold the Dahlins to that limitation.

9

Goffinet (the latter in her capacity as an expert) is entirely and unnecessarily duplicative. Pursuant to the Court's authority under Federal Rule of Evidence 403, the Court finds that the needlessly cumulative effect of this duplication would substantially outweigh the probative value of the second expert. The Dahlins will be required to choose between these two expert witnesses and should advise defendant of their selection no less than two weeks prior to the start of trial. *See also* N.D. Ill. LR Form 16.1.1, fn. 7 ("Only one expert witness on each subject for each party will be permitted to testify absent good cause shown."). (Goffinet may testify in her capacity as a fact witness irrespective of The Dahlins' election on the expert testimony.)

Evangelical argues that the testimony of Maiser and Goffinet involves "inadmissible legal conclusions" and "would invade the province of a jury." But the issue of the nature of the relationship between prospective adoptive parents and an adoption agency, which is at the core of the Dahlins' fiduciary duty claim, is largely dependent on facts, not law. As the Court discussed it its recent ruling permitting the Dahlins to proceed with their fiduciary duty claim, they are required to prove, based on the facts, that the relationship was one in which "confidence and trust is reposed on one side, resulting in dominance and influence on the other side." *Dahlin*, 2002 WL 31541618, at *3 (citing *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 45-46, 643 N.E.2d 734, 740-412 (1994); *Dyblie v. Dyblie,* 389 Ill. 326, 332, 59 N.E.2d 657, 660 (1945)). These witnesses are not being offered to give opinions involving matters within the ken of an ordinary juror, and they will not be rendering an opinion on whether a fiduciary duty exists. Evangelical's objection is without merit.

B.   Plaintiffs' motions *in limine*

1.   Testimony of Dr. Peter Fink

The Dahlins have moved to exclude certain aspects of the anticipated testimony of Dr. Peter Fink, a psychiatrist. Among other things, Evangelical anticipates eliciting from Dr. Fink testimony that the Dahlins "were on notice that there would be difficulties with Francie's placement," in particular that she would have difficulty adjusting to the adoption – what Dr. Fink calls "attachment difficulties." Response to Plaintiffs' Motion *In Limine* Regarding Dr. Fink at 3. Evangelical argues that this "bears directly on the issue of liability and proximate cause on plaintiffs' claim that their efforts to obtain treatment for Francie were delayed because of [Evangelical's] failure to provide them with certain information about Francie .... While [Evangelical] does not agree that there was any such delay, if there was, the proximate cause was plaintiffs' own failure to seek treatment when they knew or should have known Francie would have attachment issues." *Id.* at 4.

Accepting for purposes of discussion that what the Dahlins as adoptive parents should have understood is relevant to the issue of causation, Evangelical has provided no support for the proposition that Dr. Fink, testifying as an expert, has anything relevant to contribute on that issue. Not all testimony by an expert qualifies as admissible expert testimony. The significance *to a layperson* of the information known to the Dahlins does not appear to be a matter on which a jury requires expert testimony, or on which Dr. Fink has any particular expertise.

Dr. Fink likewise is not qualified to opine regarding whether the adoption workers at Evangelical ought to have understood the significance of the information they allegedly withheld; he is a psychiatrist, not an expert in adoptions or adoption ethics. He may, however, render an

11

opinion regarding the significance of the withheld information in the treatment of Francie, as such testimony is both scientifically based and squarely within the scope of his expertise.

The Dahlins also seek to preclude Dr. Fink from using diagrams regarding certain genetic issues on the grounds that these were not disclosed in timely fashion. The Court is satisfied, however, that these diagrams were contained within scientific literature that was produced to the Dahlins' counsel prior to Dr. Fink's deposition. That disclosure is sufficient to allow Dr. Fink to use the charts for the purpose of illustrating his opinions.

### 2. Testimony of Ron Nydam

The Dahlins have moved to bar the testimony of Ron Nydam, an expert retained by Evangelical to testify at trial. Nydam is a professor of pastoral care at Calvin Theological Seminary in Grand Rapids, Michigan; he was director of pastoral counseling for a counseling center in Denver, Colorado; and he served as the pastor of a church in Denver. He has a doctorate in "Religion and Psychological Studies," as well as a doctorate in ministry, and both of these degrees required him to obtain training in psychological theory and practice. He is a licensed "professional counselor" in Michigan and as such is permitted to and does conduct psychotherapy, evidently concentrating his practice in the counseling of adoptees and their families. His studies have focused in, among other areas, the history of adoption practices in this country.

In its response to the Dahlins' motion, Evangelical says that it plans to call Nydam to testify regarding the history of adoption practice; the level of understanding of, and the information available to, adoption professionals at the time of Francie's adoption; and "the evolution of the belief system of adoption professionals regarding the disclosure of negative

12

information about an adopted child." Amended Response to Motion *In Limine*, p. 1. Specifically, he will testify that the "old school" of adoption practice taught that disclosure of negative information about an adopted child's background would trigger stigma and shame and would make it harder for the adoptive family to bond with the child. *Id.* at 5-6. Nydam does not advocate this view – indeed he thinks it unwise – but he will testify that it was widely followed at the time of Francie's adoption. *Id.* Nydam's testimony in this regard is relevant in that it will put in context the testimony of Evangelical's personnel regarding their reasons for acting as they did. But although Nydam may testify that Evangelical's actions were consistent with common practice at the time, he may not attempt to characterize the reasons why Evangelical's personnel acted as they did, for to do so would be to render an opinion on their actual intent, a subject on which Nydam has no basis to render an opinion and on which his testimony would be entirely speculative.

Nydam can also properly testify about the level of information available to adoption professionals at the relevant time regarding the relationship between genetics and mental health. Evangelical characterizes this as "expert historical testimony, not expert scientific testimony, and [as such] not subject to a *Daubert* analysis." Amended Response to Motion *In Limine*, p. 9. The characterization of testimony as "scientific" or "non-scientific," however, does not govern the applicability of *Daubert, see Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999), and in any event Federal Rule of Evidence 702, which essentially restates the *Daubert* criteria, applies to all expert opinions, not just "scientific" opinions. *See* Fed. R. Evid. 702, 2000 Adv. Comm. Notes.

Applying the *Daubert* / Rule 702 criteria, Nydam appears every bit as qualified as the

13

Dahlins' expert Demosthenes Lorandos to testify regarding the nature and content of pertinent scientific information reasonably available to adoption workers at the relevant time. On the other hand, the Court will not permit Evangelical to elicit from Nydam an opinion regarding "the general beliefs of adoption agency professionals in 1978-79 regarding the importance of genetic information," *see* Amended Response to Motion *In Limine*, p. 8, as his report and Evangelical's memorandum do not disclose a sufficient basis to permit the Court to conclude that this opinion is the product of reliable principles and methods reliably applied. *See* Fed. R. Evid. 702.

Finally, Evangelical proposes to elicit from Nydam an opinion that Francie suffered from "reactive attachment disorder," which Evangelical characterizes as "a condition prevalent among adopted children which makes then unable to form attachments with other people, including the adoptive parents who care for them." Amended Response to Motion *In Limine*, p. 10; *see* Diagnostic and Statistical Manual of Mental Disorders 116-18 (4th ed. 1994) ("DSM-IV"). Though not entirely clear from Evangelical's response to the motion *in limine*, its contention appears to be that many of Francie's problems following her adoption were attributable not to psychological dysfunction but rather to factors that are common among adopted children. *See* Amended Response to Motion *In Limine*, pp. 10-11.

Although Nydam has diagnosed and treated attachment disorder in many of his own counseling clients, his written report in this case, which was required to "contain a complete statement of all opinions to be expressed ... *and the basis and reasons therefor [and] the data or other information considered* by [Nydam] in forming the opinions," Fed. R. Civ. P. 26(a)(2)(B) (emphasis added), fails to set forth a sufficient foundation for him to render a diagnosis of Francie. His report essentially reflects that Francie, like other adopted children, *likely* faced

significant hurdles in developing an attachment to her adoptive family. *See* Amended Response to Motion *In Limine,* Ex. 2 (Nydam report), pp. 7-8. But Nydam has never examined Francie, and his report references nothing in her medical records or any of the other evidence in the case that supports the proposition that she *actually* suffered from the disorder described in DSM-IV. In addition, though Nydam has extensive experience in pastoral counseling and in the counseling of adoptive children and families, he is neither a psychiatrist nor a clinical psychologist, and nothing in his report or in Evangelical's submission reflects that his training and experience enables him to diagnose an adopted child without examining or interviewing with her, but simply from reviewing her records. In sum, neither Nydam nor Evangelical has provided the Court with anything that even suggests, let alone shows, that Nydam's opinion regarding Francie's condition is "the product of reliable principles and methods" that "the witnesses has applied ... reliably to the fats of the case." Fed. R. Evid. 702. That opinion is therefore inadmissible. *See Daubert,* 509 U.S. at 597 (district court must "ensur[e] that an expert's testimony rests on a reliable foundation").

Nydam may, however, testify regarding the difficulties that commonly affect adoptive children – in other words he may testify about attachment problems generally and how they manifest themselves. Rule 702 permits expert testimony that "educate[s] the fact finder about general principles, without ever attempting to apply those principles to the specific facts of the case." Fed. R. Evid. 702, 2000 Adv. Comm. Notes. Testimony on this point is relevant, as there is some evidence in the record that suggests Francie may have suffered from attachment difficulties (though not from the "disorder" described in DSM-IV). And Nydam appears by his education and experience to be qualified to testify in this regard.

15

### 3. Evidence of Evangelical's not-for-profit status

The Dahlins have moved to exclude evidence that Evangelical is a not-for-profit agency, arguing that this evidence is irrelevant and is offered only to engender sympathy among the jurors. Evangelical's first argument is that this evidence tends to show that it lacked a financial motive to fraudulently induce the Dahlins to adopt Francie. This is a *non sequitur*; the extent to which the cost of caring for Francie may have posed a financial burden on Evangelical if she was not adopted is unaffected by whether it was a for-profit or not-for-profit agency. Evangelical's second argument concerns the Dahlins' claim for punitive damages; it contends that evidence of its not-for-profit status would tend to undercut any argument by the Dahlins that Evangelical acted as it did in order to enrich itself. *See Jannotta v. Subway Sandwich Shops, Inc.*, 125 F.3d 503, 511 (7th Cir. 1997) (punitive damages are available if the defendant intended to enrich itself without regard to the effect of its conduct on others). But at oral argument on the motion, the Dahlins' counsel disavowed any intention to make such an argument. For these reasons, the Dahlins' motion is granted.[4]

---

[4] Evidence regarding a defendant's financial status may be relevant on the issue of punitive damages; the amount of punitive damages needed to deter an impecunious defendant may differ from that needed to deter one that is flush with cash. *See, e.g., Wilson v. Colston*, 120 Ill. App. 3d 150, 152-53, 457 N.E.2d 1042, 1044 (1983). But the rule in Illinois seems to be that it is up to the plaintiff, not the defendant, to inject the defendant's finances into the case. *See, e.g., Black v. Iovino*, 219 Ill. App. 3d 378, 580 N.E.2d 139, 150 (1991). And in any event, simple intonation of the term "not-for-profit" has no probative value with regard to Evangelical's financial statue; to illustrate, the MacArthur Foundation, a not-for-profit entity, has an endowment in the billions. Evangelical has offered no financial statements or other evidence of its financial condition, and thus we need not address the admissibility of such evidence.

## Conclusion

For the reasons stated above, defendant's motion *in limine* No. 1 [docket item 25-1] is granted; its motions *in limine* Nos. 2, 3, 5, and 6 [items 25-1, 26-1, 27-1] are denied; its motions *in limine* Nos. 4 and 7 [items 25-1 & 28-1] are granted in part and denied in part; and its motions *in limine* Nos. 8 and 9 [items 29-1 & 30-1] are granted only to the extent that plaintiffs are required to elect between expert witnesses Maiser and Goffinet. Plaintiffs' motion *in limine* regarding Dr. Fink [item 43-1] and their motion *in limine* regarding Ron Nydam [item 42-1] are is granted in part and denied in part, and their motion *in limine* regarding defendant's not-for-profit status [item 44-1] is granted. Motions 45-1 & 2 are terminated as moot.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 18, 2002